UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCKINDAL JULES,

                                    Petitioner,

-vs-                                                                    DECISION and ORDER

                                                                        21-CV-6342 CJS

MERRICK B. GARLAND, Attorney General of the
United States, THOMAS FEELEY, Field Office
Director for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement, and JEFFREY J. SEARLS, Facility
Acting Director Buffalo Federal Detention Facility,

                                    Respondents.
_____

INTRODUCTION

        Proceeding *pro se*, Marckindal Jules ("Petitioner") (A 056-554-065) commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241") challenging his continued detention, for more than two years, as a criminal alien pursuant to 8 U.S.C. § 1226(c), by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), pending the completion of removal proceedings against him.   For the reasons discussed below, the application is granted, to the extent that Petitioner must now be provided with a bond hearing at which the Government will bear the burden of proof to show that continued detention is warranted.

1

BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition and administrative record in this action.

Petitioner is a native and citizen of Haiti who lawfully entered the United States in or about 2004 and was granted Lawful Permanent Resident ("LPR") status.    Petitioner subsequently committed several crimes.    In 2011, Petitioner was charged with Criminal Mischief in the Fourth Degree and Harassment in the Second Degree, and was convicted of Criminal Contempt in the Second Degree and sentenced to time served (a month).[1]    In July 2017 Petitioner was arrested and charged with Assault in the Second Degree after injuring an individual with a broken bottle.    The record indicates that following a verbal dispute Petitioner charged at the victim several times with a broken bottle, cut the victim on the wrist with the bottle[2] once the victim had fallen to the ground, resisted efforts by the police to arrest him and then shoved a police officer during processing at the police station. Petitioner admits that he cut the man with the bottle, but contends that he was defending himself.    Later that same month, Petitioner was arrested and charged with assaulting another individual, a woman, by striking her in the head with a "2" x 4" board with plywood and nails protruding from it, though Petitioner denies that he did so.[3]    A Rockland County,

_____

[1]  ECF No. 6-2 at p. 1.

[2]  According to Petitioner the injury was not serious and the victim did not require stitches.

[3]  According to the charging instrument, Petitioner was fighting with some males in the street when the female victim walked by them.    Petitioner then followed the woman to her home and struck her with the 2"x4" board. ECF No. 6-2 at p. 14.    In his removal proceedings, Petitioner argued that when he eventually pled guilty to one count of Assault in the Second Degree, it was with regard to the assault with the broken bottle, and he denied ever striking the female victim. ECF No. 6-2 at p. 85.    The IJ handling Petitoner's

New York, Grand Jury indicted Petitioner on two counts of Assault in the Second Degree, after which Petitioner was convicted, upon his plea of guilty, to one count of Assault in the Second Degree and one count of Resisting Arrest.   Notably, the plea to Assault in the Second Degree did not involve the alleged assault of the female victim with a 2"x4" board.[4] The Court sentenced Petitioner to an aggregate sentence of two years in prison[5]  and issued orders of protection that expire in 2026.[6]

On October 9, 2018, the Government issued a Notice to Appear ("NTA") to Petitioner, charging him with being removable under INA § 237(a)(2)(A)(iii) for having committed an aggravated felony.   Upon his release from state prison, on March 28, 2019 Petitioner was taken into DHS custody pending the completion of his removal proceedings, pursuant to the mandatory criminal-alien detention statute, INA § 236(c), 8 U.S.C. § 1226(c).   Petitioner subsequently acknowledged that he was removable for having been convicted of an aggravated felony,[7]  but sought withholding of removal under INA § 241(b)(3) and withholding and deferral of removal under the Convention Against Torture

_____

removal case seems to have agreed that Plaintiff's conviction was not for assaulting the female victim. ECF No. 6-2 at p. 88 ("The Court is aware that the respondent was not convicted of a crime regarding Ms. Mejia but the evidence shows a restraining order was put in place while that is sorted out."); *see also, id.* at p. 97 ("The [Immigration] Court notes the respondent has **not** been convicted of the assault regarding the piece of wood and contests that he was even involved.") (emphasis added).

[4]  See the previous footnote.

[5]  ECF No. 6-2 at p. 221.

[6]  These are not isolated incidents of criminal activity by an otherwise law-abiding individual.   Rather, Petitioner candidly indicated to an IJ that he had been arrested at least ten times.

[7]  ECF No. 6-2 at pp. 303-304. On this point, *see, Demore v. Kim*, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003) ("Lest there be any confusion, we emphasize that by conceding he is "*deportable*" and, hence, subject to mandatory detention under § 1226(c), respondent did not concede that he *will ultimately be deported*.") (emphasis in original).

("CAT").[8]   In connection with Petitioner's applications, he sought and obtained

adjournments or continuances that, at most, totaled less than two months.   For reasons

not attributable to Petitioner, the proceedings were further adjourned or extended

approximately seven months.[9]  On April 17, 2020, more than a year after he was taken into

DHS custody, an Immigration Judge ("IJ") denied Petitioner's applications for withholding

of removal and deferral of removal under the CAT, and ordered him removed to Haiti.

Petitioner appealed the IJ's ruling to the Board of Immigration Appeals ("BIA").

Five months later, on October 16, 2020, the BIA remanded the matter to the IJ for further

administrative proceedings.   In particular, the BIA found that the IJ had not properly

evaluated whether Petitioner's conviction for Assault in the Second Degree was for a

"particularly serious crime" that would bar him from obtaining withholding of removal.   The

BIA remanded the matter to the IJ for re-consideration of that issue, as well as for

reconsideration, in light of intervening decisions by the BIA, of the IJ's finding that

Petitioner was not entitled to relief under the CAT.

On December 1, 2020, the IJ again denied Petitioner's applications and ordered him

removed to Haiti.   The IJ again found that Petitioner was ineligible for withholding of

removal since his conviction for Assault in the Second Degree was for a particularly

---

[8]  ECF No. 6-2 at p. 150–151.   Petitioner, who is being treated for an unspecified mental illness that includes
auditory hallucinations, contends that if he is removed to Haiti, he will be unable to afford mental health
medications and will likely be persecuted by community members who have no sympathy for the mentally ill.
Petitioner also believes that some of his family members have been victims of political violence in Haiti.
[9]  ECF No. 6 at pp. 5–6.

serious crime, and that Petitioner had not shown that the was entitled to relief under the
CAT.   On December 30, 2020, Petitioner filed an appeal with the BIA, and that appeal
remains pending now, almost ten months later.   In the appeal, Petitioner contends that
the IJ again failed to properly evaluate whether his conviction was for a particularly serious
crime and also improperly denied him the opportunity to testify concerning the details of
the crimes.[10]   Petitioner also contends that he is appealing his criminal convictions, and
that he has been granted leave to pursue a late appeal by the state appellate court.
Petitioner also contends on appeal that the IJ erred in finding him ineligible for relief under
the CAT.   In the meantime, Petitioner remains confined at the Buffalo Federal Detention
Facility ("BFDF") pending completion of his removal proceedings.   Petitioner has been in
DHS custody approximately 30.5 months, during which he has not received any type of
custody review, inasmuch as he is mandatorily detained.

On April 23, 2021, Petitioner filed the subject action.   Liberally construed, the
Petition purports to assert the following claims: 1) violation of Petitioner's Fifth Amendment
Procedural Due Process rights based on his detention for more than six months without a
hearing at which the Government was required to prove by clear and convincing evidence
that he is a flight risk or a danger to the community; 2) violation of Petitioner's Fifth
Amendment Substantive Due Process rights based on detention without a sufficient
justification; and 3) violation of Petitioner's Eighth Amendment rights arising from "[t]he

---

[10]   *See, e.g.*, ECF No. 6-2 at pp. 118, 126.

government's categorical denial of bail to certain non citizens."[11]   As for relief, the Petition

requests, *inter alia*, that the Court immediately release Petitioner "with appropriate

conditions of supervision" or alternatively, that the Court order Petitioner's release within

thirty days unless the Government schedules a detention hearing at which the Government

must establish by clear and convincing evidence that Petitioner presents a danger to the

community or a risk of flight, even after consideration of alternatives to detention.

Petitioner indicates that he is neither a danger to the community nor a flight risk, and that

his entire family, some or all of whom are U.S. citizens, resides in the U.S.[12]   On the other

hand, Petitioner indicates that he has no family remaining in Haiti.[13]

On June 24, 2021, the Government filed its response to the subject Petition,

asserting that Petitioner is properly detained pursuant to INA § 236(c), and that Petitioner

has not shown that § 236(c) is unconstitutional as applied to him, since any delay in

Petitioner's removal proceedings has been caused by "his own litigation choices" and

since Petitioner's detention, "while lengthy, "has not become sufficiently or unreasonably

prolonged to form a basis for a procedural due process claim."[14]   In making these

arguments, the Government relies heavily on the Second Circuit's decisions in *Dor v.

District Director*, 891 F.2d 997 (2d Cir. 1989), *Doherty v. Thornburgh*, 943 F.2d 204 (2d

---

[11]  The Petition also contains references to other types of claims, but these sections of the pleading seems to have been copied and pasted from other petitions or court decisions that have no relevance to the facts of Petitioner's case.
[12]  ECF No. 6-2 at p. 280.
[13]  ECF No. 6-2 at p. 286–287.
[14]  ECF No. 6-3 at p. 1.

Cir. 1991), *Sanusi v I.N.S.*, No. 03-2566, 100 Fed.Appx. 49 (2d Cir. Jun. 14, 2004) and *Abimbola v. Ridge*, No. 05-2700-cv, 181 Fed. Appx. 97 (2d Cir. May 18, 2006), for the proposition that the length of a detainee's detention does not become unreasonable simply because of delays flowing from his own litigation choices. *See*, ECF No. 6-3 at p. 12 ("Petitioner's due process claims are directly contrary to Second Circuit opinions holding that a petitioner cannot raise due process claims when detention – even lengthy detention – is the result of the petitioner's own pursuit of legal remedies in removal proceedings."). The Government contends, in this regard, that Petitioner "has no meritorious defense to his removal,"[15] but, rather, has prolonged matters by pursuing only discretionary relief from removal.[16]

　　Alternatively, the Government contends that even under the multi-factor reasonableness test adopted by many district courts in this Circuit to assess as-applied procedural due process challenges to mandatory detention under INA § 236(c), Petitioner's detention has not become unreasonably prolonged.   In this regard, the Government notes, for example, that an IJ has already twice denied Petitioner's request for withholding of removal on the grounds that he had committed a particularly serious crime, and that the pending appeal to the BIA is unlikely to be decided in Petitioner's favor,

---

[15]  ECF No. 6-3 at p. 18.

[16]  *Compare, Alberto v. Decker*, No. 17-CV-2604 (PKC), 2017 WL 6210785, at *7 (S.D.N.Y. Nov. 21, 2017) ("Considering the circumstances of Alberto's case, the indefinite detention without a hearing is a deprivation of due process of law. *No argument has been made that Alberto is relying on continuances he requested or on time expended seeking discretionary relief to bolster his due process claim*.") (emphasis added).

given the deferential standard of review applied to such appeals.    Further, the

Government maintains that Petitioner has failed to show that his confinement at the BFDF

is not meaningfully different than at a penal institution.[17]   The Government also contends

that the serious nature of Petitioner's crime weighs against a finding of a due process

violation, as does the fact that his immigration proceedings are nearing their end.[18]

Neither the Government nor Petitioner disputes the Court's jurisdiction to decide

Petitioner's habeas claim.

On July 15, 2021, Petitioner filed a reply that, primarily, emphasizes the length of

time that he has been in custody, and contends that he is not responsible for most of the

delay in his administrative proceedings.[19]  *See, e.g.*, ECF No. 7 at p. 4 ("Whilst the Due

Process Clause is not offended by the mandatory detention of aliens without a hearing for

the 'brief period necessary' for removal proceedings, *Demore [v. Kim]*, 538 U.S. [510,] 513,

[123 S.Ct. 1708 (2003) ("*Demore*")], over 27 months cannot be considered brief, by any

stretch of the imagination!"); *see also, id*. at p. 5 ("The pace of proceedings before the

Immigration Court, and, the BIA appeals process, causing a cumulative time of over 27

months, which could possibly grow, must not be attributed to Petitioner.").   Additionally,

Petitioner contends that he has not "conceded to his removability" since he is pursuing

---

[17]  *See*, ECF No. 6-3 at p. 21 ("Petitioner has not described, in particular, his living conditions.").
[18]  The Government recognizes that even if the BIA denies Petitioner's appeal, he may file a petition for
review ("PFR") with the Second Circuit, which will further delay his removal, but argues, again, that such a
litigation choice by Petitioner does not make the length of his continued detention unreasonable.
[19]  Petitioner argues that he is responsible for four months of delay, at most.

discretionary relief from removal, and argues that he has "a meritorious defense to his removal," referring to his applications for withholding of removal and for relief under the CAT.[20]   Petitioner also indicates that he is pursuing an appeal of his criminal convictions. Petitioner asserts, moreover, that his detention by DHS has already exceeded the duration of his criminal sentence, and that the conditions at BFDF are not meaningfully different than those at a penal institution.   On this last point, Petitioner offers details concerning his conditions of confinement at BFDF.   (He adds that he has not had any disciplinary infractions at BFDF).   Petitioner also contends that while his crimes involved violence, they were the product of mental illness, which he is now treating.[21]   Finally, Petitioner contends that his removal proceedings are not almost concluded, since the BIA has not yet ruled on his (second) appeal.

On July 22, 2021, *amicus curiae* the New York Civil Liberties Union Foundation filed a brief in support of the Petition, with the Court's permission. The purported purpose of the *amicus* brief was to argue that the Second Circuit's ruling in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) "provides the relevant legal framework to assess [Petitioner's] procedural due process claim." In that regard, *amicus* argues that the Court should apply the *Mathews v. Eldridge* test, rather than the widely-used multi-factor reasonableness test,

_____

[20]  As noted earlier, Petitioner has conceded that he is "removable" and thus subject to mandatory detention under INA § 236(c), and he accordingly waived a *Joseph* hearing.   The fact that he may not ultimately be removed does not mean that he is not "removable," *see*, footnote 6 above.

[21]  Petitioner acknowledges that when he committed the crimes of Assault in the Second Degree and Resisting Arrest he had stopped taking his mental health medications and was drinking alcohol.   He maintains, though, that he intends to be more diligent in taking his medications, since he has now learned his lesson and does not want to return to prison.

to determine whether Petitioner's detention has become unreasonably prolonged such that he is entitled to receive additional procedural safeguards.[22]

On August 9, 2021, Respondents filed a response to the *amicus* brief. Respondents contend that the Court should disregard the *amicus* brief because it raises issues not raised by the parties, and because *Velasco Lopez*, which involved an alien detained under INA § 236(a), is inapplicable to cases under INA § 236(c), at least with regard to the issue of whether a detainee's detention has become unreasonably prolonged.   In that regard, Respondent contends that such detention only becomes unreasonably prolonged in a particular case where there has been "unreasonable delay by the Government," such that it becomes "necessary then to inquire whether the detention is not to facilitate deportation, or protect against risk of flight or dangerousness, but to incarcerate for other reasons." Resp. Memo of Law (ECF No. 13) at p. 4 (quoting Justice Kennedy's concurrence in *Demore*).

DISCUSSION

Petitioner has filed the subject petition pursuant to 28 U.S.C. § 2241, proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

---

[22]  ECF No. 10 at p. 1; *see also, id.* ("Beyond *Velasco Lopez*'s clear guidance, this Court should apply [the U.S. Supreme Court's balancing test from] *Mathews* [*v. Eldridge*] to this claim for the additional reason that it provides a more administrable legal framework than the nebulous reasonableness test previously adopted by [district] courts in this Circuit."). The "reasonableness" test to which the *amicus* brief refers applies the so-called "*Sajous* factors" to the particular facts of the petitioner's situation to assess where detention pending completion of removal proceedings has become unreasonably prolonged. The *amicus* brief contends that the *Velasco Lopez* decision replaces this test with the three-factor *Mathews v. Eldridge* test.

1994).   "[F]ederal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241." *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998).

The Proper Respondent

As a preliminary matter the Government contends that the Court should dismiss all respondents except Jeffrey Searls, who, it maintains, is the person having custody over Petitioner.   The Court agrees that Searls is the only proper respondent in this action. *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility. See ECF No. 5 at 20.   As the "person with direct control" over Petitioner's detention, id., he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings— *i.e.*, those challenging present physical confinement." (quotation omitted)).").   Accordingly, the Court will dismiss the other named respondents in this action and direct the Clerk of the Court to amend the caption to list Searls as the sole respondent.

Petitioner is Subject to Mandatory Detention Under the Relevant Statute

There is no dispute here that Petitioner's continued detention is required by statute, namely, 8 U.S.C. § 1226(c).   In this regard, 8 U.S.C. § 1226(c)(1)(C) states in pertinent

11

part that "[t]he Attorney General shall take into custody any alien who--   . . .   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A) . . . (iii) . . . of this title."   Further, 8 U.S.C. § 1227(a)(2)(A)(iii) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."   On October 9, 2018, the Government charged Petitioner with being removable under INA § 237(a)(2)(A)(iii) for having committed an aggravated felony and Petitioner conceded that he was convicted of Assault in the Second Degree, which is an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii).   Consequently, Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1226(c) pending the completion of removal proceedings.

The Eighth Amendment "Excessive Bail" Claim Lacks Merit

The Petition purports to allege an Eighth Amendment "excessive bail" constitutional violation, based on the allegation that "[t]he government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment." However, the claim lacks merit since, as just discussed, Petitioner is subject to mandatory detention under INA § 236(c) and is not eligible for bail.   Additionally, Petitioner has not made any showing whatsoever to support the bare assertion that there is a government policy of "categorical denial of bail to certain noncitizens." Accordingly, the Eighth Amendment claim is denied.

Petitioner's Substantive Due Process Claim Lacks Merit

Despite being statutorily subject to mandatory detention pending the completion of his removal proceedings, Petitioner contends that his substantive due process rights are

12

being violated since he is subject to "indefinite detention" without a sufficient justification. However, the Court disagrees.

A substantive due process violation may occur where an alien who has been detained pending removal can establish that his removal is not reasonably foreseeable. *See, Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (Observing that in *Zadvydas*, "[i]n order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. . . . Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause.").   However, there is no due process violation where removal remains reasonably foreseeable. *See, id*. ("Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable.").

In the instant case, Petitioner has not made any showing that his removal is unlikely to occur in the near future.   To the contrary, as already discussed, Petitioner was admittedly convicted of an aggravated felony, and, if the BIA upholds the Immigration Judge's determination that Petitioner is not entitled to withholding of removal under INA § 241(b)(3) or withholding and deferral of removal under the CAT, Petitioner has not identified any obstacles to his removal, other than any continued legal challenges that he may assert.   Consequently, Petitioner's detention is not indefinite or potentially permanent; rather it will end once his removal proceedings are complete.   Although Petitioner's removal proceedings have been going on for over two years, that fact, without

13

more, does not result in a substantive due process violation. *See, e.g., Beqir v. Clark*, 220 F. App'x 469, 471 (9th Cir. 2007) ("Krasniqi has made no showing that his removal is not practically attainable. While his detention has been lengthy, its length is attributable to the administrative and judicial processes.   Moreover, his detention has a definite termination point. Upon completion of judicial review of his petition, our stay of the removal order will be lifted. Thus, Krasniqi's detention meets substantive due process requirements."); *see also, Perez v. Aviles*, 188 F. Supp. 3d 328, 332–33 (S.D.N.Y. 2016) ("Perez's detention has not been arbitrary or unreasonable. While Perez's detention has been lengthy, there is no indication of an 'unreasonable delay' by DHS in pursuing or completing Perez's removal.   Rather, the length of Perez's detention has largely been due to his own appeals. Although Perez has acted within his rights in challenging his removal orders, he may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.") (citations omitted).   Consequently, Petitioner's substantive due process claim lacks merit and is denied.

Petitioner's Procedural Due Process Claim

The remaining question is whether Petitioner's detention since March 28, 2019, a period of two years and seven months, without a bond hearing, violates his procedural due process rights.

The analysis must start with the recognition that *in general* the detention of criminal aliens like Petitioner under INA § 236(c), without a bond hearing, for the entire period of their removal proceedings does *not* violate due process. *See, Demore*, 538 U.S. at 513,

123 S.Ct. at 1712 ("We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings."); *see also, id*., 123 S.Ct. at 526, 123 S.Ct. at 1719 (indicating that it has been the Supreme Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings.").

In that regard, the Supreme Court in *Demore* stated both that, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens," and that, "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, 123 S.Ct. at 1717.

In emphasizing that aliens, including LPRs like the respondent in *Demore*, do not have the same due process rights as citizens, the Court stated:

> It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.   At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.   As we said more than a century ago, deportation proceedings would be [in] vain if those accused could not be held in custody pending the inquiry into their true character.

*Demore*, 538 U.S. at 523, 123 S.Ct. at 1717 (citations and internal quotation marks omitted).

15

The Supreme Court in *Demore* found that the alien-respondent's detention for six months without any type of bond hearing, pursuant to INA § 236(c), did not violate due process.   In that regard, the Court emphasized that removal proceedings at that point in history (2003) were relatively speedy affairs.   In particular, the Court stated:

> Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than [90 days].   The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.   In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter.
>
> ***
>
> In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.

*Demore*, 538 U.S. at 529-530, 123 S.Ct. at 1720-1721 (footnotes omitted). The majority opinion in *Demore*, however, did not indicate that detention for longer than that would necessarily violate due process.   Rather, it concluded by re-asserting that mandatory detention of an alien under INA § 236(c) "*for the limited period of his removal proceedings*" without a hearing comported with due process. *Id*., 538 U.S. at 531, 123 S.Ct. at 1722.

Justice Kennedy joined the *Demore* majority opinion "in full," but wrote a concurring opinion stating, in pertinent part:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.   Were there to be

16

an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Demore*, 538 U.S. at 532-533, 123 S.Ct. at 1722 (Kennedy, J.) (citations omitted).

The gist of *Demore* is that due process entitles an alien accused of being deportable for having committed a certain type of crime to a hearing (a "*Joseph* hearing") at which he may prove that he is not actually subject to mandatory detention as a criminal alien.[23]   If the alien is unsuccessful at the *Joseph* hearing or waives the hearing (as happened in this case), it is consistent with due process to mandatorily detain the alien under 8 U.S.C. § 1226(c) for the "brief" or "limited" time required to complete removal proceedings.   At this point of the process, the Government's interest in preventing the alien from committing additional crimes and in assuring that he does not abscond outweighs the alien's liberty interest.   This is because Congress, which has the power to

---

[23] *See, e.g., Arthur v. Gonzales*, No. 07-CV-6158 CJS (VEB), 2008 WL 4934065, at *10 (W.D.N.Y. Nov. 14, 2008) ("Section 236(c)'s implementing regulations "provide an alien with the opportunity to establish that he is 'not properly included' in the statute's reach, but they say nothing about what, precisely, that alien must show." Id. (citing 8 C.F.R. § 1003.19 (2005)).   The BIA addressed this issue surrounding the scope of INA § 236(c) *In re Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999), in which it concluded that "the initial determination by the Bureau of Immigration and Customs Enforcement ... that an alien fell within the reach of § 236(c) was entitled to a great deal of deference." *Id*. (citing *Joseph*, 22 I. & N. Dec. at 800). Under *Joseph*, an alien seeking to avoid the reach of INA § 236(c) is required to show that BICE was "substantially unlikely to establish" the charges that rendered the alien subject to mandatory detention. *Joseph*, 22 I. & N. Dec. at 806 ("Thus, in this context, a lawful permanent resident will not be considered properly included in a mandatory detention category only when an Immigration Judge is convinced that the Service is substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention."). An alien charged with being subject to INA § 236(c) is entitled to "a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore v. Kim*, 538 U.S. 510, 514, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002)[.]").

treat aliens differently than citizens, has found that criminal aliens *in general*, if released

pending removal proceedings, are likely to commit additional crimes and unlikely to show

up for removal proceedings.   Due process thus permits mandatory detention of such

aliens without an individualized showing of danger or flight risk. *See, Demore*, 538 U.S. at

528, 123 S.Ct. at 1720 ("[W]hen the Government deals with deportable aliens, the Due

Process Clause does not require it to employ the least burdensome means to accomplish

its goal.").   However, if a particular alien's mandatory detention becomes unreasonably

prolonged, due process will require the Government to demonstrate that continued

detention is necessary because the *particular alien* is likely to commit more crimes or to

abscond.    *Demore* did not explain when such detention would become unreasonable or

unjustified.

In 2015, the Second Circuit decided *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015)

("*Lora*"), which primarily involved an issue of statutory construction of 8 U.S.C. § 1226(c).

The Circuit Court found that, "in order to avoid significant constitutional concerns

surrounding the application of section 1226(c), it must be read to contain an implicit

temporal limitation," and, in particular, that "mandatory detention longer than six months

without a bond hearing affronts due process." *Lora*, 804 F.3d at 606.   The Circuit Court

found that this conclusion was required by the Supreme Court's decisions in *Demore* and

in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), the latter of which involved the

potentially "indefinite" detention of aliens post-final removal order.[24]   The Circuit Court

noted that there was no test in this Circuit for determining when mandatory detention under

§ 1226(c) would become unreasonable, and it followed the Ninth Circuit in adopting a

"bright-line" 6-month rule, while rejecting a multi-factor reasonableness test employed by

the Third and Sixth Circuits. In so doing, the Circuit Court asserted that bright-line rules

"provide clear guidance and ease of administration" while case-by-case reasonableness

tests result in "pervasive inconsistency and confusion." *Lora*, 804 F.3d at 615.   The Circuit

Court indicated that after six months of detention under § 1226(c), an alien "must be

admitted to bail unless the government establishes by clear and convincing evidence that

the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at

616.   The *Lora* panel also suggested that *Demore's* holding, which found no procedural

due process violation, was somewhat limited to its facts (*i.e.*, a relatively brief detention),

and stated that that the length of time it was taking the government to complete removal

proceedings had significantly increased since *Demore* was decided. *See, Lora*, 804 F.3d

at 605 ("[T]oday, a non-citizen detained under section 1226(c) who contests his or her

removal regularly spends many months and sometimes years in detention due to the

---

[24]  *See, Lora*, 804 F.3d at 606 ("While the Supreme Court has held 'that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings,' *Demore*, 538 U.S. at 526, 123 S.Ct. 1708, it has made clear that indefinite detention of a non-citizen 'raise[s] serious constitutional concerns' in that '[f]reedom from imprisonment – from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects.' *Zadvydas v. Davis*, 533 U.S. 678, 682, 690, 121 S.Ct. 2491[.]   Following this guidance, we hold that, in order to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation.").

enormous backlog in immigration proceedings.").

Following an appeal in *Lora* by the Government, the U.S. Supreme Court granted *certiorari* and vacated the Second Circuit's decision in light of the Supreme Court's decision in *Jennings v Rodriguez*, 583 U.S --- , 138 S.Ct. 830 (2018) ("*Jennings*"). However, the *Lora* action was subsequently dismissed as moot after the detained alien was granted relief from deportation.

Subsequently, another judge of this district described the post-*Jennings* and post-*Lora* state of the law in this Circuit concerning as-applied procedural due process challenges under 8 U.S.C. § 1226(c) as follows:

> [Prior to the Supreme Court's decision in *Jennings*,] the Ninth Circuit required bond hearings to be held for aliens detained pursuant to 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b), as a matter of statutory interpretation. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013).   Moreover, the Second Circuit had adopted the Ninth Circuit's approach—at least as it pertained to aliens detained pursuant to § 1226(c)—and imposed a bright-line rule that those alien detainees be afforded a bond hearing after six months of immigration detention. *See Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[I]n order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."), *cert. granted, judgment vacated*, ⎯⎯ U.S. ⎯⎯, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018).
>
> ***
>
> *Jennings* held that § 1225(b) does not contain an implicit six-month time limit at which point a bond hearing must be held, thus eliminating the statutory six-month bright-line rule formulated in *Rodriguez* and adopted by *Lora*. 138 S. Ct. at 844. As a result, the Supreme Court subsequently granted certiorari in *Lora*, vacated the judgment, and remanded the case for "further consideration" in light of its decision in *Jennings*. *Shanahan v. Lora*, ⎯⎯ U.S.

——, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained in the immigrant habeas context. However, the overwhelming majority of district courts within the Circuit to have addressed the issue in the context of 8 U.S.C. § 1226(c)—pertaining to the detention of criminal aliens—have adopted a case-by-case approach where "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore v. Kim*, 538 U.S. 510, 532, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). The case-by-case approach is an "as-applied, fact-based analysis ... derived from the Supreme Court's decisions in [*Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)] and *Demore*." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *see Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that the *Sajous* framework has been "overwhelmingly adopted" in the Southern District of New York (quotation omitted)); *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (same); *c.f. Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018) (utilizing both a multi-factor test and the traditional procedural due process analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), enforcement granted *sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 n.7 (S.D.N.Y. Nov. 21, 2018) (concluding that "[t]he *Mathews* test is consistent with the approach of ... considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach), appeal withdrawn, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified in the § 1226(c) context can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral*, 331 F. Supp. 3d at 261. These factors require consideration of multiple variables in determining whether a detainee has been held for an unreasonably lengthy period of time. While "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months," *Sajous*, 2018 WL 2357266, at *10, "the sheer length of the proceedings is not alone determinative of reasonableness," *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) (quoting *Young v. Aviles*, No. 15-CV-4545 (JMF), 2015 WL 4579204, at *1 (S.D.N.Y. July 29, 2015)), appeal withdrawn, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019). For example, while "'aliens should not be punished for pursuing avenues of relief and appeals[,]' ... evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (first alteration in original) (quoting *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

*Abdi v. McAleenan*, 405 F. Supp. 3d 467, 475–77 (W.D.N.Y. 2019) (Wolford, J.).

Then, last year, the Second Circuit decided *Velasco Lopez v. Decker*, cited earlier,

that involved a habeas petition by a non-criminal alien detained under a different section, 8

22

U.S.C. § 1226(a), "which provides for discretionary detention of noncitizens during the pendency of removal proceedings." *Id*. at 845.   The Circuit Court found that the detainee's right to procedural due process had been violated, since, although he had been granted multiple bond hearings during his fifteen months of detention, the Government had not been required to show, by clear and convincing evidence, that he was a danger to the community or a flight risk.   Rather, the burden had been on the detainee at those hearings to prove that he was not a danger or a flight risk.   The Circuit Court found that violated procedural due process.   In making that determination, the Court found that Velasco Lopez's detention was "prolonged," though it declined to establish a rule for determining "when" someone detained under § 1226(a) would become entitled "to a bond hearing with a shifted burden." *Id*. at 855. Instead, the Court remarked that detention under § 1226(a) for fifteen months without any showing by the government that such detention was warranted violated due process "on any calculus." *Id*.   The Court also evaluated the sufficiency of the procedures that had been followed in Velasco Lopez's case, using the three-factor test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976), and found that they were deficient.   Finally, the Circuit Court held that at the bond hearing to which Velasco Lopez was entitled, due process required that the Government bear the burden of proof to show by clear and convincing evidence that Velasco Lopez was a danger or a flight risk, since a person's individual liberty was at stake. *Velasco Lopez*, 978 F.3d at 856 ("We believe that it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty.

23

Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.").

With these principles in mind, the question now before this Court is whether, in light of the factors set forth above, Petitioner's continued detention under § 1226(c), for two years and seven months, without a bond hearing, has become "unreasonable or unjustified," such that it violates his right to procedural due process, and, if so, what remedy is due.   With regard to the first issue, the Court applies the multi-factor "*Sajous* factors" test discussed above.[25]

Applying this test, the Court finds that the first factor, the length of time the petitioner has been detained, favors Petitioner.   Petitioner has been detained two years and seven months, which is obviously a very significant amount of time to be held without a detention hearing.   The second factor, the party responsible for the delay, is neutral since neither Petitioner nor Respondent has done anything to improperly delay the completion of removal proceedings.   Rather, the majority of the delay appears attributable to the length of time it has taken the BIA to decide Petitioner's appeals, which is out of the parties' control.   The third factor weighs in favor of Petitioner, since he has asserted defenses to removal.   For example, Petitioner contends that although he was convicted of an

---

[25]  The Court declines the invitation of *amicus curiae* to adopt the *Mathews v. Eldridge* test that was used in *Velasco Lopez*.   Because of the differences between § 1226(a) and § 1226(c), which the *Velasco Lopez* decision emphasized several times, the Court does not believe that *Velasco Lopez* is apposite to this case, at least with regard to deciding whether Petitioner's due process rights were violated.   The Court finds, on the other hand, that *Velasco Lopez* is relevant to deciding the standard of review to be applied at any hearing that is ordered.

aggravated felony, he should still be eligible for withholding of removal under INA § 241(b)(3) since the circumstances of the assault conviction are not indicative of a "particularly serious crime."    The fourth factor also weighs in Petitioner's favor, since he has already been detained far longer than he spent in prison for his criminal convictions. The fifth factor, whether the detention facility is meaningfully different from a penal institution, is neutral on the present record, since neither party has made a compelling showing either way.    The sixth factor, the nature of the crimes committed by the petitioner, weighs against Petitioner, since they involve multiple instances of violent conduct, at least one of which resulted in injury to a victim.    Lastly, the seventh factor weighs in Petitioner's favor, since the Court cannot say that his detention is near its conclusion.    In that regard, Petitioner is still awaiting a decision on his appeal from the BIA, and it is quite possible that the BIA may again remand the matter for further proceedings.    Moreover, even if the BIA denies Petitioner's appeal, he may file a petition for review with the Second Circuit.

Having weighed and considered all of the factors, and particularly the fact that Petitioner has been detained two years and seven months, due, primarily, to apparent volume-related administrative delays over which he has no control, with no end in sight, the Court finds that the factors overall weigh in Petitioner's favor, and that his detention under § 236(c) has become unreasonably prolonged.[26]    "It is well-established within this

_____

[26]  The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed herein, the arguments are either moot or without merit under the particular facts of this case.

Circuit that when a court determines the length of a petitioner's detention pursuant to §

1226(c) is unjustified, due process requires that he be given a bond hearing where an

individualized determination can be made as to whether he should remain confined for the

duration of his immigration proceedings." *Matos v. Barr*, 509 F. Supp. 3d 3, 12 (W.D.N.Y.

2020).   Moreover, as mentioned earlier, the Second Circuit indicated in *Velasco Lopez*

that at such a hearing in which "the individual's liberty" is at stake, the Government should

be required to prove by clear and convincing evidence that continued detention is

warranted, based on the detainee being either a danger to the community or a flight risk.

*Velasco Lopez*, 978 F.3d at 856.

## CONCLUSION

For the foregoing reasons, the Court: (1) dismisses all respondents except Jeffrey

Searls from the instant action; (2) grants the Petition (ECF No. 1) in part to the extent that

the Court orders the Government to afford Petitioner an individualized bond hearing, at

which the Government will bear the burden of proof by clear and convincing evidence,

within fourteen (14) days of entry of this Decision and Order; and (3) denies the amended

petition without prejudice in all other respects.

If Petitioner requests a continuance that results in a bond hearing date outside the

14-day deadline set forth above, such a continuance will be in compliance with the instant

Decision and Order, as long as the new date falls within a reasonable time period.

Respondent is directed to file a status update with the Court within three (3) days of the

date of a decision concerning Petitioner's bond hearing regarding the outcome of the

hearing, or within 30 days of the date of this Decision and Order, which is earlier. The Court denies Petitioner's request for immediate release.

The Clerk of the Court is directed to amend the caption to list Jeffrey Searls, in his official capacity as Acting Assistant Field Office Director and Administrator of the Buffalo Federal Detention Facility, as the sole respondent to this action and to dismiss the other named respondents.   The Clerk is further directed to enter judgment and close this case.

So Ordered.

Dated:      Rochester, New York
            October 26, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge